1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    NICOLE NEWMAN,                              Case No. 11cv3041 DMS (BLM)

12                              Plaintiff,        **ORDER DENYING AMENDED**
                                                  **UNOPPOSED MOTION FOR**
13              vs.                               **PRELIMINARY APPROVAL OF**
                                                  **CLASS ACTION SETTLEMENT**
14    AMERICREDIT FINANCIAL SERVICES,
      INC.,
15
                              Defendant.
16

17          Pending before the Court in this action for violation of the Telephone Consumer Protection

18    Act, 47 U.S.C. § 227 ("TCPA"), is Plaintiff's amended motion for class certification and preliminary

19    approval of class action settlement.[1]  Defendant filed a notice of non-opposition.  Plaintiff's initial

20    motion was denied on April 15, 2013.  For the reasons which follow, the amended motion is denied.

21                                    **Background**

22          Defendant administers automobile loan accounts.  Plaintiff and the proposed nation-wide class

23    are individuals who allegedly received calls to their mobile phones from Defendant or Defendant's

24    agents using autodialing equipment or a prerecorded voice message in violation of the TCPA.  In her

25    complaint, Plaintiff alleges claims for negligent, knowing and willful TCPA violations.  Plaintiff

26    _____

27          [1]      This action was consolidated with *Mack v. General Motors Financial Corp., Inc.*, 12cv
      3038-DMS (BLM) for purposes of class action settlement.  After Ms. Mack passed away on May 17,
28    2013, her daughter, Julie Schultz, for herself and on behalf of the estate, settled Ms. Mack's individual
      claims.  Accordingly, on November 14, 2013, the *Mack* action was dismissed with prejudice as to
      Plaintiff's individual claims.  The putative class members' claims were dismissed without prejudice.

1    requests $500 in statutory damages for each negligent violation, and treble statutory damages of up

2    to $1,500 for each knowing or willful violation, as well as injunctive relief against future violations.

3        The action settled without any substantive motion practice after two conferences with

4    Magistrate Judge Barbara Lynn Major and a two-day mediation with Magistrate Judge Leo S. Papas

5    (ret.).  Although only informal discovery was conducted in the present case, Plaintiff benefitted from

6    formal discovery in *Mack v. General Motors Financial Corp., Inc.*,12cv3038-DMS (BLM), a related

7    action which has since been dismissed.

8        In general, the amended settlement agreement provides for certification of a class action for

9    settlement purposes and Defendant's payment of up to $8.5 million[2] in exchange for a release from

10   class members without admission of fault.  (Kazerounian Decl." Ex. 1 (Settlement Agreement dated

11   Oct. 25, 2013) ("Settlement").[3])

12       Plaintiff proposes to certify a class defined as:

13       all persons who were (a) called on a cellular telephone by Defendant ... or a third party
         dialing company on behalf of Defendant, using an automated dialer or by prerecorded
14       voice message between December 30, 2007 through the date of Preliminary Approval
         ..., or (b) current and former customers of Defendant whose name or account was
15       associated with a cellular telephone number in Defendant's records between December
         30, 2007 through the date of Preliminary Approval ... .
16

17   (*Id*. at 2.)  Accordingly, the class includes Defendant's customers who had an account with Defendant

18   and provided Defendant with one or more mobile phone numbers (subsection (b) above), and all other

19   persons who did not have an account but who were called by Defendant on a mobile phone

20   (subsection (a)).  For example, Plaintiff Nicole Newman's brother had an auto loan account, but the

21   calls were made to Plaintiff's mobile phone, even though she did not have an account.

22       According to the Settlement, Defendant's payment is allocated as follows:  (1) notice and

23   settlement administration costs, estimated at $1,001,721 to $1,238,399, depending on the number of

24

25       [2]    Defendant is obligated to pay a minimum of $6.5 million.  If $6.5 million is insufficient
     for class member awards of at least thirty dollars ($30) each, Defendant is obligated to pay an
26   additional sum necessary to increase the awards to thirty dollars ($30) each.  However, Defendant is
     not obligated to pay more than a total of $8.5 million.  (Settlement at 3-4.)
27

28       [3]    The Settlement appears to lack paragraph numbers for the provisions listed under the
     heading "Definitions."  (Settlement at 2-5.)  Accordingly, it is not possible to precisely correlate the
     citations in Plaintiff's memorandum of points and authorities with the Settlement.

1   claims filed (Passarella Decl. at 2); (2) attorneys' fees and costs of class counsel of up to $2,065,000,

2   subject to an appropriate motion (Kazerounian Decl. at 7); (3) class representative's incentive award

3   of up to $1,500, subject to an appropriate motion (Newman Decl. at 3); and (4) a pro rata distribution

4   to class members who submit valid claims.  (Settlement at 3-4.)  A special definition applies to the

5   proposed pro rata distribution:  (1) a class member with more than one mobile number associated with

6   Defendant's account may receive one recovery per number; (2) if more than one class member was

7   listed on the account with a mobile number, each may recover;[4] and (3) a class member without an

8   account may receive one recovery per mobile phone number called.  (*Id*. at 2.)

9        The parties established that as of December 21, 2012, Defendant had 1,477,909 accounts,

10   wherein 1,762,716 individuals were listed and 2,805,051 unique mobile phone numbers were

11   identified.[5]  (Settlement at 1; Mot. at 8 & n.6.)[6]  According to Plaintiff's motion, "a significant

12   percentage of the Class Members are not alleged debtors" and Defendant does not have identifying

13   information for them.  (Mot. at 9.)  No support is offered for the assertion that the percentage is

14   "significant" and it is unclear whether the mobile phone numbers of class members without an account

15   are included in the 2,805,051 unique mobile phone numbers identified by Defendant.  Assuming that

16   (1) each of the known 1,762,716 individuals associated with Defendant's accounts makes one valid

17   claim, (2) none of the class members who are not associated with an account makes a claim, (3) the

18   notice and settlement administration costs amount to the high end of the estimated range, or

19   $1,238,399, and (4) the class counsel and representative are awarded their entire requests, totaling

20

21   _____

22       [4]     It is unclear whether each class member may recover for only one mobile phone
     number or for as many mobile phone numbers as were called.  (Settlement at 2 ("Where a class
23   member has more than one cellular telephone number associated with a Loan, the class member may
     receive one recovery per telephone number.  Where more than one person is or was obligated on a
24   Loan or is or was listed on a joint account, each of those persons shall be allowed to make a claim,
     if their cellular telephone number was called.  Where a Class Member does not have an account with
25   AmeriCredit, but is a member of the Class, he or she may receive one recovery for each cellular
     telephone number called").)

26       [5]     The information provided is over a year old.  The parties should either update the
     numbers so that the settlement can be more accurately evaluated, or certify that the numbers are still
27   the same.

28       [6]     Contrary to the representations in Plaintiff's motion (Mot. at 8 n.6), Defendant has not
     filed a declaration supporting this information.

$2,066,500, the pro rata class member award will approximate $2.95, even if Defendant pays the maximum sum of $8.5 million.

### Settlement Class Certification

Before approving a class action settlement agreement, the Court must make a finding that a class may be certified. *See, e.g., Molski v. Gleich*, 318 F.3d 937, 943, 946-50 (9th Cir. 2003), *rev'd on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010). "When a district court, as here, certifies for class action settlement only, the moment of certification requires heightened attention." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848-49 (1999) (internal quotation marks and citation omitted). "The court must look to the class certification factors 'designed to protect absentees.'" *Molski*, 318 F.3d at 953, quoting *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, ___U.S.___, 131 S.Ct. 2541, 2550 (2011). "A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." *Wang v. Chinese Daily News, Inc.*, 709 F.3d 829, 832 (9th Cir. 2013); *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 806-07 (9th Cir. 2010) ("*United Steel*") (burden is on the moving party). Plaintiff seeks certification under Rule 23(a) and (b)(3).

"Rule 23(a) ensures that the named plaintiff is an appropriate representative of the class whose claims she wishes to litigate. The Rule's four requirements – numerosity, commonality, typicality, and adequate representation – effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Dukes*, 131 S.Ct. at 2550-51 (internal quotation marks and citations omitted). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id*. at 2551 (emphasis in original). Furthermore, certification under Rule 23(b)(3) is proper only when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and ... a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Proc. 23(b)(3).  This inquiry "requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair," such that the proposed class is superior to other methods for adjudicating the controversy. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010).

Plaintiff's motion does not adequately address the requirements of commonality, predominance and typicality.  Rule 23(a) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  This means that the putative class members' claims depend on a common contention, which

> must be of such nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke. [¶]  What matters to class certification ... is not the raising of common "questions" – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Dukes*, 131 S.Ct. at 2551 (internal quotation marks and citation omitted).  "The predominance inquiry [under Rule 23(b)(3)] focuses on the relationship between the common and individual issues and tests whether the proposed class [is] sufficiently cohesive to warrant adjudication by representation." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (internal quotation marks, footnote and citation omitted).  The typicality requirement of Rule 23(a)(3) focuses on the relationship of facts and issues between the class and its representatives:

> the commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*Dukes*, 131 S.Ct. at 2551 n.5 (internal quotation marks and citation omitted).  Although representative claims need not be substantially identical, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), the action must be based on conduct which is not unique to the named plaintiffs, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiff's proposed class is composed of two distinct groups – those with accounts and those without accounts.  The difference between these two groups is significant for class certification

1   because class members with accounts may have consented to Defendant's calls to their mobile phones

2   when they opened their accounts (Def.'s Statement of Non-Opp'n. at 5), thus potentially negating

3   liability, *see* 47 U.S.C. § 277(b)(1)(A) (excepting calls "made with prior express consent"), which is

4   not the case for class members without accounts.

5           The motion fails to adequately address whether Plaintiff, who does not have an account with

6   Defendant, is typical of the entire class, and whether, in light of the consent issue, the proposed class

7   meets the commonality and predominance requirements.  *See Molski*, 318 F.3d at 946 (the district

8   court decision on certification of settlement class "must be supported by sufficient findings to be

9   afforded 'the traditional deference given to such determination'"), quoting *Local Joint Executive Bd.*

10  *Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1161 (9th Cir.2001).  Accordingly, Plaintiff's

11  request for certification of a settlement class is denied.

12                              **Settlement Fairness**

13          Rule 23(e) requires court approval of class action settlements.  A class action settlement may

14  be approved only based on a finding that the settlement is "fair, reasonable, and adequate."  Fed. R.

15  Civ. Proc. 23(e)(2).  The settlement proponents ultimately bear the burden to show that the proposed

16  settlement meets this standard.  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *see also*

17  *Officers for Justice v. Civil Svc. Comm'n. of the City and County of San Francisco*, 688 F.2d 615, 625

18  (9th Cir. 1982).

19          The consent issue, which potentially negates liability to class members with accounts, raises

20  the issue of fairness, as such class members are proposed to be compensated the same as class

21  members without accounts who have not consented.  Relevant to evaluating settlement fairness are

22  the amounts offered in settlement, *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 946

23  (9th Cir. 2011), and "the fairness and reasonableness of the procedures for processing individual

24  claims under the settlement," Fed. Jud. Ctr., Manual for Complex Litig., Fourth at 316 (2004).  The

25  latter two factors cannot be adequately evaluated because of ambiguities in the Settlement and

26  Plaintiff's motion.

27          For example, it is unclear whether the mobile phone numbers of class members without

28  accounts are included in the 2,805,051 unique mobile phone numbers identified by Defendant.  This

1    makes it difficult to accurately evaluate class member recovery, particularly because Plaintiff asserts

2    that a "significant" percentage of the class includes members without accounts.  (*See* Mot. at 9.)  It

3    also raises questions about claim administration (more fully discussed below).  In addition, it is

4    unknown whether the 2,805,051 unique mobile phone numbers were actually called by an automated

5    dialer or a prerecorded voice (*see* Kazerounian Decl. at 5 ("were called"); *id*. at 6 ("may have been

6    called); Mot. at 8 (were called); *id*. at 5-6 ("may have been called").)  An answer to this question is

7    necessary to understand the proposed claim processing and to give class members satisfactory notice.

8            To submit a claim, a class member must turn in a claim form identifying a mobile phone

9    number, and certify, among other things, that the number was called by Defendant by an automatic

10   dialing system or a prerecorded voice without consent.  (Settlement at 4 & Ex. C (Proposed Claim

11   Form).[7])  Under the Settlement, Defendant must provide a list to the settlement administrator for

12   purposes of claim processing.  (Settlement ¶ 2.02; Kazerounian Decl. at 6.)  It is unclear whether the

13   list will include mobile numbers of class members who were *actually* called, *potentially* called, or

14   both.  (Mot. at 7-8 ("potentially dialed"); *id*. at 13-14 ("may have been called"); *id*. at 30 ("cell phone

15   numbers called"); *see also* Kazerounian Decl. at 4-5 ("the number called"), *id.* at 6 ("may have been

16   called"); *id*. at 9 ("actually called").)  The Settlement is not specific with respect to determining claim

17   validity and therefore does not help resolve this ambiguity.  It states that only class members who

18   submit valid claim forms will be paid.[8]  (Settlement at 4.)  According to Plaintiff's motion, the claim

19   will be paid if, among other things, the mobile number on the claim form matches a mobile number

20   on the settlement administrator's list.  (Mot. at 8, 14.)  Claims may be denied if the mobile number

21   on the claim form does not match a number "actually called."  (Kazerounian Decl. at 9; Mot. at 14;

22

23          [7]      The proposed claim form includes an inconsistency which would alone preclude the
24   use of the form as proposed.  It first includes an instruction to "provide the cellular phone number
     called ... by the automatic telephone dialing system ... ."  However, the class member's certification
25   states, "I affirm that I received a telephone call ... on my cellular phone by an automatic telephone
     dialing system *or prerecorded voice* ... ."  (Settlement Ex. C at 1 (emphasis added).)  This creates an
26   ambiguity whether a claim is valid if the call was made by a prerecorded voice and not by an
     automatic telephone dialing system.  Furthermore, class members are not informed how one would
27   know that the call was made by an automatic telephone dialing system.

28          [8]      To be valid, a claim form must, in pertinent part, be "correct," and "shall be treated as
     incorrect if the statements contained thereon are false, or if the Class Member otherwise is not entitled
     to be treated as claimed."  (Settlement at 4.)

*id.* at 12 (not on the list of "called numbers").)  Claims of members without an account may be paid if, among other things, their forms list a "valid cell phone number that was called."  (Mot. at 9.)  It is not apparent how the settlement administrator is to verify claims because it is unclear whether (1) the list will include any information about the members without accounts; and (2) the numbers on the list were the numbers actually called or potentially called.[9]

An additional area of concern is that class members may not opt out as a group.  (Settlement ¶ 2.04 ("In no event shall persons who purport to opt out of the settlement as a group, aggregate, or class involving more than one Class Member be considered valid opt outs.").)  The Court is not inclined to approve limitations on the members' right to opt out, so long as there are sufficient assurances that each member exercising the right has consented.  Further, the Court is not inclined to approve a settlement which makes it unnecessarily burdensome to submit a claim or opt out.  The class members are required to submit claim forms and opt out requests by mail (Mot. at 14 (claims); Pl.'s Ex. 1.B. (Proposed Class Notice) ¶ 10 (opt out requests)), although the settlement administrator is obligated to provide a phone number and a website (Passarella Decl. at 2-3).  The only justification offered for the mailing requirement is that the claim forms require an affirmation.  (Mot. at 14.) Plaintiff does not explain why an affirmation could not be provided through an online form or by phone with adequate identification of the class member.  Similarly, the requirement that the settlement administrator maintain a toll-free number only during the 90-day claims period (Mot. at 30) appears insufficient to address inquiries about status of submitted claims or final approval of the settlement.

Next, the Settlement provides that any motion for attorneys' fees and costs is to be filed concurrently with the motion for final settlement approval.  (Settlement ¶ 2.10.)  Because a motion for final settlement approval typically addresses objections to the settlement, the current provision does not provide class members an opportunity to object to the fee motion itself, as opposed to only the notice that a fee motion for a certain amount will be filed at a later time.  "[A] schedule that requires objections to be filed before the fee motion itself is filed denies the class the full and fair

---

[9]     A complete list of mobile numbers which were potentially called makes it possible to eliminate claims for numbers which are not listed; however, it is not sufficient to verify the claims for listed numbers.  Only a list of actually called numbers would suffice to verify claims consistent with Plaintiff's representations about claim processing.

1    opportunity to examine and oppose the motion that Rule 23(h) contemplates." *See In re Mercury*

2    *Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2009).

3            Furthermore, the termination provisions in the Settlement raise additional fairness issues. One

4    of the possible grounds for termination by Defendant is if the number of class members to be paid

5    exceeds 2,070,000.  (Settlement ¶ 6.03(b).)  No reason is given for this provision, which appears to

6    work contrary to the purpose of the notice and claims process to result in the maximum number of

7    valid claims being submitted.  Without qualification, the Settlement is also "terminable upon the

8    mutual agreement of the Representative Plaintiff and Defendant."  (*Id*. ¶ 6.03 (last sentence).)  The

9    Court is not inclined to approve a settlement which is terminable merely by agreement of the named

10   parties after notice of settlement has been given to the class.

11           Finally, Plaintiff's motion does not include any showing that the parties have complied with

12   the notice requirements of 28 U.S.C. Section 1715.  In any further motion seeking preliminary

13   approval of class action settlement, the parties must either certify compliance with 28 U.S.C. Section

14   1715 or demonstrate that compliance is not required.  Should the parties receive any communication

15   from the relevant government official in response to the notice, they must promptly inform the Court.

16                                         **Notice of Settlement**

17           The notice of settlement must explain in easily understood language the nature of the action,

18   definition of the class, class claims, issues and defenses, ability to appear through individual counsel,

19   procedure to request exclusion, and the binding nature of a class judgment.  Fed. R. Civ. P.

20   23(c)(2)(B).  The proposed notice does not meet this requirement.

21           As an initial matter, the notice is confusing for the reasons discussed above with respect to

22   claim administration, and provides insufficient information for class members to determine whether

23   to opt out.  This is particularly important given the broad release that will bind class members who

24   do not opt out.  (*See* Settlement ¶¶ 4.01 & 4.02.)

25           The requisite information is presented throughout the notice according to a question and

26   answer format; however, the same topics are covered multiple times in a different manner in each

27   instance (for example, the notice lists some requirements for a valid claim in one section, but not in

28   another section discussing the same topic), thus creating unnecessary confusion.  Furthermore, the

1   notice as a whole appears to be directed to the class members with accounts, who Defendant was able

2   to identify and who are to receive summary notice and a claim form by mail.  This makes the notice

3   confusing for the allegedly significant percentage of class members who did not have an account and

4   received notice by publication.  The confusion makes it difficult for them to determine whether they

5   are included in the class and whether they should submit a claim or opt out.[10]

6          Next, the notice does not adequately discuss the pros and cons of each side's case or disclose

7   the damages and attorneys' fees a prevailing plaintiff could recover if the case were fully litigated.

8   It also does not adequately or accurately summarize important terms of the Settlement, including what

9   is required to make a valid claim, the meaning of pro rata distribution in the context of this settlement,

10  or the broad release provisions.[11]  The instructions about how to opt out are lacking, and no form is

11  provided to opt out.  The claim form does not adequately provide for making a claim based on more

12  than one mobile phone number, which class members are allowed to do.  Finally, the notice does not

13  include the Court's correct address.

**Conclusion**

15         For the foregoing reasons, Plaintiff's motion for settlement class certification and preliminary

16  approval of class action settlement is denied without prejudice to refiling.  This order is not intended

17  to provide a comprehensive list of reasons for denying the motion.  Should Plaintiff choose to file

18  another motion for settlement class certification and preliminary approval of class action settlement,

19  she must address the issues noted above as well as all other issues necessary for the Court to make

20  appropriate findings in support of class certification and preliminary approval of settlement, including

21  the claim processing procedure, and approval of the proposed notice and related forms.  Prior to filing

22  / / / / /

---

[10]      Paragraph 1 of the notice is titled "Why did I get a postcard with a Notice?"  Perhaps this paragraph should be followed by one entitled "What if I did not get a postcard with a Notice?," to address class members who received notice by publication or other proposed means.

[11]      Although the entire release is attached to the long form notice, the provision in the body of the notice does not describe the wide reach of the release (Notice ¶ 9), thus discouraging the reader from referring to the attachment.  Furthermore, the discussion of the releases is neither included nor referenced in the relevant sections, which discuss the consequences of not opting out.  (*Cf.* Notice ¶¶ 9, 10 & 21.)

another such motion, Plaintiff is encouraged to make a through review of the settlement agreement and related notices and forms to make the changes necessary for approval.

**IT IS SO ORDERED.**

DATED:  February 3, 2014

_____
HON. DANA M. SABRAW
United States District Judge